**James CHERRY, Petitioner-Appellant,**

**v.**

**Arnold JAGO, Respondent-Appellee.**

**No. 80–3110.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1982.
Decided Dec. 8, 1983.

Richard L. Aynes, Appellate Review Office, School of Law, University of Akron, Akron, Ohio, for petitioner-appellant.

Simon B. Karas, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before MERRITT and JONES, Circuit Judges, and BROWN, Senior District Judge.[*]

MERRITT, Circuit Judge.

Petitioner, James Cherry, appeals the denial of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. He seeks collateral review of his Ohio jury conviction for murder in his petition which alleges, *inter alia,* that he was denied due process because the confusing jury instructions impermissibly placed upon him the burden of proving self-defense beyond a reasonable doubt. We find the jury instructions, though somewhat confusing, did not shift the burden of proof in violation of the federal constitution. We have also considered the effect of the various other errors allegedly committed during the trial and find no denial of due process. Accordingly, we affirm the judgment of the District Court.

Petitioner Cherry and Robert Lawrence apparently were homosexual lovers and had lived together as such for approximately seven to eight years in Akron, Ohio. Lawrence constantly demanded money from Cherry and often used physical force to get it. Lawrence had inflicted serious injuries upon the appellant, including a punctured lung from a gunshot wound and a broken jaw bone. The week prior to the events that gave rise to this action, petitioner was again physically abused when he refused Lawrence's demand for money; thereafter, Lawrence threatened to kill him.

On December 1, 1975, petitioner had given Lawrence $30.00 to pay Lawrence's parole officer. Later that day Lawrence demanded more money, and when petitioner refused, Lawrence hit him, knocking him off the bar stool onto the floor at Julius' Scotch Lounge. Lawrence pulled petitioner to his feet and toward the front door while telling petitioner that he wanted to go get something to eat. While heading toward their apartment, Lawrence again demanded money from petitioner, who took a gun from his pouch and fired two warning shots in the air. Lawrence reached into his pocket, and petitioner fired a third shot, hitting Lawrence in the back of the neck. Upon Lawrence's death, petitioner was charged with first degree murder.

Petitioner was tried before a jury. During the court's charge to the jury, petitioner's counsel objected to the instructions as violating due process. The jury found him guilty, however, and petitioner was sentenced to a term of fifteen-years-to-life imprisonment.

Petitioner appealed his conviction to the Court of Appeals of Summit County, Ohio, claiming that it was error: (1) for the state to cross-examine him on prior charges that had either been dismissed or reduced, (2) for the court to instruct the jury regarding prior similar acts when such acts were too remote in time to be considered, and (3) for the prosecution to appeal to community interests and passions during its closing argument. The appellate court affirmed Cherry's conviction. On appeal to the Ohio Supreme Court, petitioner raised these same alleged errors and, as a fourth claim, alleged that the trial judge erred in instructing the jury as to the defendant's burden of proof on the issue of self-defense. That court dismissed the appeal for failure to raise a substantial constitutional question.

Thereafter, Cherry filed a petition for writ of habeas corpus with the United

* The Honorable Wesley E. Brown, United States District Court for the District of Kansas, sitting    by designation.

States District Court for the Northern District of Ohio. He presented the four grounds previously asserted and raised a new claim—that the prosecution's cross-examination violated his due process rights by implying to the jury that he should not be accorded the presumption of innocence and that the arguments of his counsel should be discredited because he had represented petitioner in other proceedings. The District Court denied the first three claims on the merits and the latter claims for failure to fully exhaust available state remedies. On appeal, this Court remanded the petition to the District Court for reconsideration of the exhaustion issue in light of *Keener v. Ridenour,* 594 F.2d 581 (6th Cir.1979). Upon remand, the District Court considered all petitioner's claims on the merits and again denied the habeas petition. This appeal followed.

In this appeal, petitioner raises the grounds previously asserted and contends that the most important error committed during the trial occurred during the jury instruction. He contends that the instructions were so confusing in regard to the allocations of the burden of proof, that he was prejudiced thereby and was deprived of his right to a fair trial. For the reasons given below, we disagree and affirm the District Court's denial of the petition.

## I.

■ In order to successfully challenge a jury instruction in a habeas corpus proceeding, it is not sufficient that the petitioner prove that the instruction was contrary to state law; he must demonstrate that the erroneous instruction deprived the defendant of due process. *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1568, 71 L.Ed.2d 783 (1982). In *Engle* the Supreme Court held that a jury instruction which explicitly misallocated the burden of proof of self-defense, and thus was clearly contrary to Ohio law, raised a "colorable" constitutional claim. *Id.* at 1568. The Court did not decide the due process issue, however, because of the petitioner's inability to show cause and prejudice for his failure to object to the instruction. Due process questions regarding the allocation of the burden of proof in similar situations have engendered much confusion. *Compare Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) with *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We need not reach this question, however, since we do not believe that the jury instruction in this case was so confusing that it led the jury to believe that the burden of proving self-defense was on the defendant.

■ The jury was instructed as follows on the issue of self-defense:

| *Instruction* | *Comment* |
|---|---|
| Now, the State has the burden of proving every essential element of the charge of murder beyond a reasonable doubt. However, the Defendant has the *burden of going forward with any evidence of self-defense.* | No burden of persuasion is shifted here. |
| If the Defendant *brings in evidence of self-defense such that the jury is unable to find beyond a reasonable doubt* that the State has proved each element of the crime of murder beyond a reasonable doubt, then your verdict must be for the Defendant — that is, not guilty. If, on the other hand, you find that the State has proved each and every element of the crime of murder beyond a | The only burden arguably placed on defendant is the burden of raising a reasonable doubt. |

| Instruction | Comment |
|---|---|
| reasonable doubt and the Defendant did not act in self-defense, then your verdict must be guilty of the charge. | |
| You are further instructed that *even though you find the Defendant has not proved self-defense such as would raise a reasonable doubt* of the guilt of the Defendant on the charge of murder, the State still must prove each and every element of the crime of murder beyond a reasonable doubt. | Defendant need only raise a reasonable doubt. |
| Hence, you may not convict the Defendant of the charge of murder even though you find for the State on the defense of self-defense unless you find that the State has proved every element of the crime of murder beyond a reasonable doubt. | Clear that state retains the burden of persuasion beyond a reasonable doubt, and defendant need only raise a reasonable doubt. |
| Now, the defense of self-defense applies to the charge of voluntary manslaughter the same as in the charge of murder. Self-defense is a complete defense to this charge. Hence, *if the evidence of self-defense is such that it raises in your mind a reasonable doubt* as to the guilt of the Defendant, then you must find the Defendant not guilty of this charge. (Emphasis added.) | |

Sometime after the jurors began their deliberations, they asked the court to reinstruct them as to self-defense and murder, and they were told in part that "[t]he burden of *going forward with evidence* of an affirmative defense is on the accused, and the affirmative defense of self-defense, if established, is a complete defense to the charge of murder or also to the lesser offense of voluntary manslaughter." (Emphasis added.)

The appellant argues that these instructions were impermissibly confusing, citing as authority this Court's decision in *Berrier v. Egeler,* 583 F.2d 515 (6th Cir.1978). In that case, the instructions were contradictory. In one passage the trial judge made a correct statement of the law, emphasizing that the burden of proving self-defense was not on the defendant. But other extensive passages, which were repeated to the jury several times, required the defendant to establish to the jury's satisfaction all three elements of self-defense. This suggested strongly that the defendant carried a burden of proving self-defense by a preponderance of the evidence. The instructions also misstated the law on the defendant's duty to retreat in his own home before using self-defense.

The instructions in the case before us are easily distinguishable, particularly when considered as a whole, as required. *Cupp v. Naughton,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States v. Mattucci,* 502 F.2d 883 (6th Cir.1974). It is true that at one point the instructions mention the defendant *proving* self-defense, and in the supplementary instruction the judge used the word "established" in relation to the defense of self-defense. These words taken alone may suggest that the defendant carries a burden of persuasion as well as a burden of going forward with evidence. Taken in context, however, the only burden the instructions can reasonably be read to

impose on the defendant is that of going forward with some evidence, or (and there is confusion here) the burden of raising a reasonable doubt of guilt. Neither burden violates the due process clause.

The instructions as a whole repeatedly emphasized the State's duty to prove every element of the crime beyond a reasonable doubt and the jurors' duty to acquit the defendant if his evidence of self-defense raised any reasonable doubt in their minds. The trial judge obviously made every effort to make the law clear to the jury. Although the resulting instructions were not perfect, the instructions do not require the defendant to carry the burden of proving self-defense, either by a preponderance of the evidence or beyond a reasonable doubt. Our role is not to require perfection but to insure that the instructions did not deprive the defendant of a constitutionally fair trial. These jury instructions, read as a whole, are not so confusing or unfair that they violate the defendant's due process rights.

## II.

We have reviewed the petitioner's other allegations and find no error in the District Judge's handling of these issues below.

■ First petitioner objects to the state prosecutor's cross-examination of him as to his prior criminal record. He claims that the method of questioning implicitly undermined the presumption of innocence and the credibility of his attorney. Specifically, he complains that the prosecution (1) emphasized the details of crimes charged which had been dismissed, or upon which he was convicted of a lesser offense, (2) emphasized that the defendant had pled not guilty to crimes for which he was convicted, and (3) repeatedly pointed out that defendant had been represented by the same counsel, thus implying that the attorney was not to be trusted either.

As the District Judge correctly pointed out, the defendant continuously put his rep-utation for peacefulness at issue, put his credibility at issue by taking the stand, and opened himself up to cross-examination by discussing his criminal record on direct examination. There may be some question as a matter of state evidentiary rules whether the prosecutor should have been able to bring up underlying facts of crimes on which only a lesser conviction was obtained. But we do not believe that the questioning deprived the petitioner of a fundamentally fair trial. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).

■ As to the other questioning, the prosecutor had every right to inquire about the defendant's pleas, once his credibility and criminal record were put in issue on direct. The questioning about prior representation by the same counsel, although perhaps not relevant, does not seem particularly damaging, particularly since the prosecutor did not draw any conclusions about the facts in closing argument. Furthermore, no objection was made at trial to this line of questioning, and absent a showing of cause and prejudice for the omission, we are precluded from considering the issue on collateral review. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1972).

■ Petitioner also claims that a denial of due process resulted from the prosecutor's remarks in closing argument, which appealed to community interests, passion and public policy. The trial court cautioned the jury a number of times that closing argument was not evidence, and that they should not consider public policy, sympathy or prejudice in reaching a verdict. Although the government admits that the prosecutor's argument was improper, we find that it could have had no significant effect on the fairness of the trial, in light of the judge's cautionary instructions and the isolated nature of the remarks.

■ Last, petitioner challenges the correctness of the trial court's jury instructions on similar acts. The judge first instructed that the jury could consider similar acts as

evidence of intent and credibility. After a further consultation with defense counsel, the judge decided that the acts were too remote in time and could not be considered, and so instructed the jury. We find no merit to petitioner's argument that these instructions deprived him of a fair trial.

We have considered petitioner's allegations of error cumulatively as well as separately, and still find that the trial was not "so infected . . . with unfairness as to make the resulting conviction a denial of due process." *Donnelly,* 416 U.S. at 643, 94 S.Ct. at 1871. Accordingly, we affirm the District Court's denial of the habeas corpus petition.

NATHANIEL R. JONES, Circuit Judge, dissenting.

My reading of the jury instructions differs from the majority's in that I construe the trial court's continual reiteration of the word "prove" during the course of explaining the respective burdens of proof of the parties to impose the same burden upon the defendant that is imposed upon the prosecution. It is upon this basis that I enter my dissent.

The majority's analysis overlooks the focal point of the jury instruction which consisted of the following:

> If the defendant brings in evidence of self-defense such that the jury is unable to find beyond a reasonable doubt that the State has *proved* each element of the crime of murder beyond a reasonable doubt, then your verdict must be for the Defendant—that is, not guilty. If, on the other hand, you find that the state has *proved* each and every element of the crime of murder beyond a reasonable doubt and the Defendant did not act in self-defense, then your verdict must be guilty of the charge.
>
> You are further instructed that even though you find the Defendant has not *proved* self-defense such as would raise a *reasonable doubt* of the guilt of the De-

fendant on the charge of murder, the State still must *prove* each and every element of the crime of murder beyond a reasonable doubt.

My reading of this jury instruction casts serious doubt upon the manner in which a reasonable jury would have interpreted it. The constant reiteration of the reasonable doubt standard injects a troubling element of confusion. The trial court's explanation that the defendant must prove or establish self-defense, when combined with the repeated articulation of the proof beyond a reasonable doubt standard could have been interpreted in a number of ways. Although a reasonable juror might have remembered the court's initial instruction that the defendant had only the burden of going forward, I think a more probably hypothesis is that the jury construed the defendant's burden to be that of proving self-defense beyond a reasonable doubt. The court's failure to explain or define the burden of going forward, as well as its failure to make clear that the jury need not find that self-defense had been proved beyond a reasonable doubt to find the defendant not guilty, enhances the possibility of an erroneous interpretation on the part of the jury.

I believe that the jury instructions quoted above imposed a heavier burden of proof upon the appellant than Ohio law permitted. After the jurors had begun deliberating, they requested that the court reinstruct them as to the definitions of self-defense and murder. Accordingly, the court gave a supplemental instruction essentially reciting the original instruction in part, stating that "[t]he burden of going forward with the evidence of an affirmative defense is on the accused, and the affirmative defense of self-defense, if *established,* is a complete defense to the charge of murder or also to the lesser offense of voluntary manslaughter." Upon my review of the entire jury charge, I conclude that the court's instruction that the defendant must *prove* and *establish* self-defense, implies that he was required to *prove* self-defense just as the state was required to *prove* the elements of

the crime. *See Berrier v. Egeler,* 583 F.2d 515 (6th Cir.1978). As such, the possibility that the jury applied the wrong burden of proof to the defendant's assertion of self-defense violates Ohio state law. *See State v. Robinson,* 47 Ohio St.2d 103, 351 N.E.2d 88 (1976).

Moreover, I also construe the instructions to raise questions of fundamental fairness such that a constitutional violation was committed. When Congress enacted 28 U.S.C. § 2254, the federal habeas corpus statute, it conferred upon federal courts the responsibility "for determining whether state convictions have been secured in accord with federal constitutional law." *Jackson v. Virginia,* 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). A mere error in the application of state law, does not constitute a due process violation and, consequently, it is not a cognizable claim for purposes of obtaining habeas corpus relief. *Engel v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982); *Bell v. Arn,* 536 F.2d 123, 125 (6th Cir.1976); *Reese v. Cardwell,* 410 F.2d 1125 (6th Cir. 1976). However, errors of state law that are so grossly erroneous that they "impugn fundamental fairness," do raise constitutional questions that are appropriate for habeas relief. *See, e.g., Maglaya v. Buckhoe,* 515 F.2d 265, 268 (6th Cir.1975); *Gemmel v. Buchkoe,* 358 F.2d 338, 340 (6th Cir. 1966); *Handley v. Pitts,* 491 F.Supp. 597, 599 (E.D.Tenn.1978), aff'd., 623 F.2d 23 (6th Cir.1980). Thus, when the question at issue alludes to "notions of what is fair and right and just," *Solesbee v. Balkcom,* 339 U.S. 9, 16, 70 S.Ct. 457, 460, 94 L.Ed. 604 (1950) (Frankfurter, J., dissenting), fundamental fairness is implicated such that the inquiry has constitutional due process ramifications. In the instant case, I am satisfied that a constitutional violation has occurred such that habeas relief is warranted.

The Supreme Court has held that the due process clause requires the state in criminal prosecutions to prove guilt beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The Court has further construed the reasonable doubt standard to be a prime instrument for reducing the risk of convictions that rest on factual error and to "provide concrete substance for the presumption of innocence." *Id.* at 363, 90 S.Ct. at 1072. An even more important reason underlying this standard stems from the margin of error that is always present in litigation, as the Court explained:

> "Due process commands that no man shall lose his liberty unless the Government has borne the burden of ... convincing the factfinder of his guilt." To this end, the reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue."

*Id.* at 364, 90 S.Ct. at 1072 (citations omitted). *Accord Hankerson v. North Carolina,* 432 U.S. 233, 241, 97 S.Ct. 2339, 2344, 53 L.Ed.2d 306 (1977). The due process clause has also been construed to impose a greater burden on the prosecution than that which is imposed upon the defendant to assert an affirmative defense. Therefore, the manner in which the burden of proof is allocated *necessarily* affects whether due process has been afforded a criminal defendant.

The rationale underlying this theory of unequal allocations grew out of the presumption of innocence. As the Supreme Court has recognized, "[t]he presumption of innocence is a doctrine that allocates the burden of proof in criminal trials." *Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 1870, 60 L.Ed.2d 447 (1979). Since the accused is entitled to this presumption of innocence at the outset of a trial, the prosecution bears a heavy burden in *proving* that he is guilty. The principle of imposing unequal allocation of burdens upon the prosecution and the accused has evolved from the notion that a defendant need not *prove* his innocence. Thus, the prosecution must bear a heavier burden than the accused, otherwise the presumption of innocence would be rendered a nullity. *Accord Taylor v. Kentucky,* 436 U.S. 478, 483–84 n. 12, 98 S.Ct. 1930, 1934 n. 12, 56 L.Ed.2d 468 (1978).

Since the jury instructions given below could be construed to impose equal burdens of proof upon the prosecution and the defense, I believe that they deprive the appellant of due process of law. *Accord State v. Muscatello,* 57 Ohio App.2d 231, 249–51, 387 N.E.2d 627, 640–41, *aff'd,* 55 Ohio St.2d 201, 378 N.E.2d 738 (1978). Accordingly, I would reverse the judgment of the lower court.