No. 83–6759. MORAN *v.* OHIO. Ct. App. Ohio, Cuyahoga County. Certiorari denied.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, dissenting.

Petitioner was convicted by an Ohio jury of the murder of her husband Willie Moran. She asserted at trial that she had acted in self-defense, as a result of the repeated and brutal beatings she had suffered at her husband's hands. She seeks certiorari to

review the state appellate court's holding that the jury properly was instructed that she had the burden of proving self-defense by a preponderance of the evidence. According to petitioner, the Due Process Clause forbids the State to punish her for murder when the jury that convicted her may well have thought it as likely as not that she acted in self-defense. I would grant certiorari to consider the substantial constitutional question raised by this petition—a question that this Court has labeled as "colorable" and "plausible" in previous decisions and that has for years divided state courts and lower federal courts.

# I

## A

There was substantial testimony at petitioner's trial that her husband—a man of violent temperament who virtually always carried firearms and owned a collection of pistols, rifles, and shotguns—had repeatedly beaten and brutalized her. For example, in one incident, Willie Moran "had her by the neck, by the throat, and he was hitting" her with a gun. In another incident, Willie Moran "hit her and knocked her off the chair and, then, kicked her." Petitioner's mother testified that earlier in the very week in which the murder occurred she saw Willie Moran "hit [petitioner] and knocked her on the floor, and I seen him take his feet and was kicking her."

On May 15, 1981, petitioner and Willie Moran had their last fight. According to petitioner's testimony, Willie Moran had told her that he wanted some money that he thought she had saved. He threatened that if petitioner did not have the money for him by the time he woke up from a nap, he would "blow [her] damn brains out." Petitioner, who did not have the money, unsuccessfully called a friend for help. Then, realizing that she had no way of raising the necessary funds, she entered the camper where Willie Moran was sleeping, picked up his gun, and fatally shot him.

## B

At trial, petitioner pleaded not guilty, asserting that the killing was done in self-defense.[1] Petitioner's theory at trial was that

---

[1] Under Ohio law, a murder defendant asserting self-defense must prove "(1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such

she was a victim of battered woman's syndrome. See, *e. g.*, L. Walker, The Battered Woman (1979). Descriptions of this syndrome emphasize the husband's repeated and violent beatings and the wife's dependency—economic and emotional—that make it practically impossible for her to leave. When faced with an immediate threat, victims may be driven to take the lives of their mates as the only possible method of escaping the threat. Although traditional self-defense theory may seem to fit the situation only imperfectly, see Eber, The Battered Wife's Dilemma: To Kill or to be Killed, 32 Hastings L. J. 895, 917–931 (1981); Note, Partially Determined Imperfect Self-Defense: The Battered Wife Kills and Tells Why, 34 Stan. L. Rev. 615 (1982), the battered woman's syndrome as a self-defense theory has gained increasing support over recent years.[2]

The jury at petitioner's trial was instructed: "[T]he burden of proving the defense of self-defense is upon the defendant. She must establish such defense by a preponderance of the evidence." Petitioner made a timely objection to the instructions on the ground that they unconstitutionally placed the burden of proof on her, rather than on the State.[3] The trial court overruled the

danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." *State* v. *Robbins*, 58 Ohio St. 2d 74, 388 N. E. 2d 755 (1979).

[2] Since the attempt to use battered woman's syndrome as a self-defense theory ordinarily raises only the issue whether the defendant has successfully made out the elements of self-defense in a given jurisdiction, the theory has not been addressed in a great many appellate opinions. But see, *e. g.*, *Ibn-Tamas* v. *United States*, 407 A. 2d 626 (D. C. 1979) (discussing admissibility of expert testimony on battered woman syndrome); *People* v. *Powell*, 102 Misc. 2d 775, 424 N. Y. S. 2d 626 (1980) (same), aff'd, 83 App. Div. 2d 719, 442 N. Y. S. 2d 645 (1981); cf. *State* v. *Wanrow*, 88 Wash. 2d 221, 234–241, 559 P. 2d 548, 555–559 (1977).

[3] The instructions were given in accordance with Ohio Rev. Code Ann. § 2901.05(A) (1982) ("The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused"). As this statute indicates, the concept of "burden of proof" has two components—burden of production and risk of nonpersuasion. Petitioner's claim here is that the State misallocated the risk of nonpersuasion. There is no doubt that she introduced sufficient evidence to meet whatever burden of production she may have had under state law to come forward with evidence on the issue of self-defense. The issue in this case—and the only issue with which this opinion is concerned—is whether the State may constitutionally place on the defendant the risk of nonpersuasion with respect to self-defense. Cf. *Mullaney* v. *Wilbur*, 421 U. S. 684, 701, n. 28, 702, n. 30 (1975).

objection and the jury returned a verdict of guilty of aggravated murder. The Court of Appeals of the County of Cuyahoga affirmed the conviction and the Ohio Supreme Court dismissed the appeal "for the reason that no substantial constitutional question exists." Petitioner seeks a writ of certiorari to vindicate her Fourteenth Amendment right to have the State bear the burden of proof in a criminal prosecution.

## II

### A

This Court held in *In re Winship*, 397 U. S. 358 (1970), that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364. We noted that this standard "plays a vital role in the American scheme of criminal procedure" and that "[t]he standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" *Id.*, at 363 (quoting *Coffin* v. *United States*, 156 U. S. 432, 453 (1895)).

Several years later, we applied the teachings of *Winship* in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975). In *Mullaney*, the defendant had been convicted in a Maine state court of murder despite his defense of provocation. Under Maine law, as we explained in the opinion:

> "[A]bsent justification or excuse, all intentional or criminally reckless killings are felonious homicides. Felonious homicide is punished as murder—*i. e.*, by life-imprisonment—unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter—*i. e.*, by a fine not to exceed $1,000 or by imprisonment not to exceed 20 years." *Id.*, at 691–692.

The *Mullaney* trial judge instructed the jury that "if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation." *Id.*, at 686. We held that this instruction was constitutionally infirm under the

Due Process Clause and our holding in *Winship:* once evidence tending to show provocation was introduced, the State—not the defendant—had to bear the burden of proving beyond a reasonable doubt the absence of provocation.

Two years later, in *Patterson* v. *New York*, 432 U. S. 197 (1977), we applied these principles to the New York murder statutes. The defendant in *Patterson* had claimed that he had committed the murder under the influence of "extreme emotional disturbance" and was therefore entitled to a verdict of manslaughter. The jury found him guilty of murder. New York law provided that the State had to prove only "[t]he death, the intent to kill, and causation" in order to convict a defendant of murder. *Id.*, at 205. If the State met its burden, the defendant could reduce the conviction to manslaughter by proving by a preponderance of the evidence that he had acted under the influence of extreme emotional disturbance for which there was a reasonable explanation. We held that—contrary to the situation in *Mullaney*—shifting the burden to the defendant on the issue of extreme emotional disturbance did not violate the Due Process Clause.

Nothing in *Patterson* questions the validity of the *Winship* holding that the burden of proof is on the State to prove beyond a reasonable doubt all of the elements that constitute the crime. Nor is there any doubt that the States have wide discretion in allocating the burden of proof between the prosecution and defense on issues that are *not* elements of the crime. Thus, in order to determine whether a State may allocate the burden of proof on an issue in a criminal prosecution to the defendant, it must first be determined what elements constitute the crime in question; this was the problem in *Mullaney* and *Patterson*. Yet the resolution of those cases left the solution to this problem in some doubt and the lower courts in considerable disarray.[4] The difficulty can be

---

[4] The Sixth Circuit, for instance, has recently noted the "confusion" in this area in a case dealing with the same claim as that asserted by petitioner. See *Cherry* v. *Marshall*, 722 F. 2d 1296, 1298 (1983), cert. denied, 467 U. S. 1244 (1984); see also *Engle* v. *Isaac*, 456 U. S. 107, 122, n. 23, and 132–133, n. 40 (1982) (citing cases); *Melchior* v. *Jago*, 723 F. 2d 486, 492–493 (CA6 1983) (characterizing identical issue to that of petitioner as "open question"), cert. denied, 466 U. S. 952 (1984); *Thomas* v. *Leeke*, 725 F. 2d 246, 249–251 (CA4 1984) (similar problem under South Carolina law); *Holloway* v. *McElroy*, 632 F. 2d 605 (CA5 1980) (holding that Constitution requires State of Georgia in

seen by contrasting *Mullaney*'s insistence that *"Winship* is concerned with substance rather than . . . formalism," 421 U. S., at 699, with the statement in *Patterson* that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition* of the offense of which the defendant is charged." 432 U. S., at 210 (emphasis added). That the Due Process Clause permits the States considerable discretion in defining criminal offenses (and in allocating burdens of proof on matters outside the defined elements of its crimes) is clear. But the *Patterson* opinion did not purport to overrule *Mullaney* and itself recognized that "there are obviously constitutional limits beyond which the States may not go in this regard." 432 U. S., at 210. This case presents the opportunity for us to define those limits.

B

Petitioner did not seek to defend herself on the ground of provocation (as in *Mullaney*) or extreme emotional disturbance (as in *Patterson*). Rather, she relied on self-defense as a justification for her action. She asserts that, given the central place of self-defense in Anglo-American jurisprudence and the crucial role it can play in justifying—not merely mitigating—what would otherwise have been a criminal act,[5] the *Winship* doctrine applies with full force to Ohio's allocation of the burden of proof on the issue: the State must prove beyond a reasonable doubt the absence of self-defense in any case in which it is an issue.

Under its most restrictive interpretation, *Patterson* established that the State's definition of an offense within the "four corners"

---

state murder prosecution to prove absence of self-defense), cert. denied, 451 U. S. 1028 (1981); *State* v. *McCullum*, 98 Wash. 2d 484, 656 P. 2d 1064 (1983) (same with respect to State of Washington); *Commonwealth* v. *Hilbert*, 476 Pa. 288, 382 A. 2d 724 (1978) (same with respect to State of Pennsylvania); Note, The Constitutionality of Affirmative Defenses After *Patterson* v. *New York*, 78 Colum. L. Rev. 655, 672 (1978) (self-defense is "major remaining area of uncertainty after *Patterson*"). Of course, the defense of provocation recognized by Maine law in *Mullaney* is but an ancestor of the broader defense of extreme emotional distress recognized by New York law in *Patterson*. See *Patterson*, 432 U. S., at 207. Given this close relationship between the two defenses, courts and commentators have had difficulty discerning the outlines of the Constitution's commands in this area.

[5] See Note, Partially Determined Imperfect Self-Defense: The Battered Wife Kills and Tells Why, 34 Stan. L. Rev. 615, 630–634 (1982).

of its murder statute is dispositive on the question of how it may allocate the burden of proof. Even under this reading, it is not clear whether Ohio's practice of placing the burden of proof on the defendant asserting self-defense is constitutional. The Ohio aggravated murder statute states that "[n]o person shall purposely, and with prior calculation and design, cause the death of another." Ohio Rev. Code § 2903.01(A) (1982). Under Ohio law, an assertion of self-defense requires proof, *inter alia*, that the defendant "was in *imminent* danger of death or great bodily harm." *State v. Robbins*, 58 Ohio St. 2d 74, 388 N. E. 2d 755 (1979) (emphasis added). To place the burden of proof on the defendant asserting self-defense therefore seems to require the defendant to prove he acted when in imminent danger of great bodily harm, and thus to negate the prosecution's burden of proving that the defendant acted "purposely, and with prior calculation and design."

On a slightly broader reading of *Patterson*, sources of Ohio law outside its murder statute may be relevant in determining what elements constitute the crime of aggravated murder in that State. In *Engle* v. *Isaac*, 456 U. S. 107 (1982), respondents sought to review the denial of their habeas petitions, in which they raised virtually the identical claim raised by petitioner here.[6] Respondents had been convicted under Ohio's murder statutes, despite their attempt to show self-defense. The Court disposed of the case on the ground that respondents' failure to raise this claim at trial was a bar to their habeas petitions under *Wainwright* v. *Sykes*, 433 U. S. 72 (1977). Nonetheless, the *Engle* opinion noted that both judicial decisions and the Ohio Criminal Code itself

---

[6] One respondent in *Engle* had been convicted of voluntary manslaughter, another had been convicted of murder, and a third had been convicted of aggravated assault. All had based their defenses at trial on self-defense. In addition to *Engle*, this Court has brushed with a similar issue in *Hankerson* v. *North Carolina*, 432 U. S. 233 (1977), decided the same day as *Patterson*. The North Carolina Supreme Court had held that the state law placing the burden of proving self-defense upon the defendant was invalid under *Mullaney;* the North Carolina court nonetheless refused to reverse the conviction because it held that *Mullaney* did not apply retroactively. We reversed on the retroactivity issue, but we did not reach the issue whether "it is constitutionally permissible for a State to treat self-defense as an affirmative defense that the prosecution need not negative by proof beyond a reasonable doubt." 432 U. S., at 240, n. 6.

indicate that the State only punishes actions that are voluntary, unlawful, and accompanied by the appropriate *mens rea*. See *Engle, supra,* at 121. Self-defense negates these elements of criminal behavior. In the course of proving guilt, the State therefore should be required to disprove the defendant's assertion of self-defense. We characterized this claim as "colorable" and "plausible" in *Engle.* 456 U. S., at 122.

These arguments concern the constitutionality of requiring the defendant to prove self-defense within the statutory scheme enacted by the Ohio Legislature and interpreted by the Ohio courts. However, lurking in the background is the still more vexing question concerning the scope of the independent constitutional limitations on how the Ohio Legislature and courts may define the elements of criminal offenses. Cf. *Patterson,* 432 U. S., at 210 (noting that "there are obviously constitutional limits beyond which the States may not go in this regard"). To assert (as the Ohio appellate court here did) that self-defense is not an element of the crime of aggravated murder is to assert that the State may punish a defendant with life imprisonment (the penalty faced by petitioner) for that offense even if the killing was done in the purest self-defense. Yet both the Due Process Clause and the Eighth Amendment may restrict the State's ability to so punish a defendant whose "crime," for example, consisted in an immediate response to a murderous attack upon him. See *Patterson, supra,* at 210; *Solem* v. *Helm,* 463 U. S. 277 (1983). If either of these constitutional provisions do so restrict the State, it is difficult to resist the conclusion that absence of self-defense is an element of every aggravated murder charge—an element required by the Constitution even if not by the State's enacted or decisional law. See *Engle, supra,* at 122, n. 22; Jeffries & Stephan, Defenses, Presumptions, and Burden of Proof in the Criminal Law, 88 Yale L. J. 1327, 1366–1379 (1979). Of course, the scope of any such constitutional constraints may never require precise definition, for they find their source in the same notions of fundamental fairness that are at the heart of Anglo-American law and that independently influence the construction and application of Ohio's criminal code. Nonetheless, these constraints must be kept in mind in evaluating the state appellate court's decision that petitioner properly bore the burden of proof on self-defense in this case.

## III

Petitioner's claim places squarely before the Court the constitutionality of the Ohio allocation of burden of proof on self-defense. It is undisputed that petitioner introduced evidence tending to prove self-defense at trial.   She then interposed a timely objection to the jury instruction allocating to her the burden of proof on the issue.[7]   In *Engle* v. *Isaac*, this Court noted the "colorable" and "plausible" nature of claims identical to those of petitioner; claims like hers are certainly sufficiently meritorious to have troubled the courts of appeals and the state courts.   I would grant certiorari to address petitioner's "colorable" and "plausible" constitutional claims.

---

[7] Given some of the problems of fitting petitioner's battered woman theory within traditional self-defense doctrine, the jury may well have faced a close question as to whether the elements of self-defense were proved.   It is precisely in these circumstances that allocation of the burden of proof can be most significant.   Cf. *Winship*, 397 U. S., at 372 (Harlan, J., concurring) (discussing "fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free"); *Speiser* v. *Randall*, 357 U. S. 513, 525–526 (1958) ("There is always in litigation a margin of error, representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt").