464 So.2d 421 (1985)
STATE of Louisiana
v.
Leigh Guy BURTON.
No. 84 KA 0694.
Court of Appeal of Louisiana, First Circuit.
February 26, 1985.
Writ Denied May 13, 1985.
*423 Ossie Brown, Dist. Atty. by Glen Peterson, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Lennie Perez, Baton Rouge, for defendant-appellant.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Leigh Guy Burton (defendant), was indicted by the East Baton Rouge Parish grand jury for the second degree murder (LSA-R.S. 14:30.1) of her husband, Richard Burton (victim). At arraignment, defendant entered a dual plea of not guilty and not guilty by reason of insanity. A jury returned the responsive verdict of guilty of manslaughter (LSA-R.S. 14:31). Defendant was subsequently sentenced to serve thirteen years at hard labor, and an additional term of two years at hard labor, without benefit of probation, parole or suspension of sentence, was imposed, as required by LSA-R.S. 14:95.2. She has appealed, alleging fifty-one assignments of error. In brief, defendant set forth six arguments which embraced twenty-eight assignments of error. Assignments of error not briefed are considered abandoned. Uniform Rules, Courts of Appeal, Rule 2-12.4. State v. Trevathan, 432 So.2d 355 *424 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1141 (La.1983). The issues preserved for appellate review are as follows.
1. Did the trial court err by refusing to permit defense counsel to question potential jurors concerning their attitudes toward the insanity defense and the battered woman's syndrome?
2. Does the overt act requirement of LSA-R.S. 15:482 apply to evidence offered on the issue of insanity?
3. Does the overt act requirement of LSA-R.S. 15:482 require an actual, contemporaneous hostile action on the part of the deceased at the time of the killing?
4. Does the overt act requirement of LSA-R.S. 15:482 violate due process?
5. Did the court err by denying defendant's motion for a continuance based on the absence of a material witness and by permitting into evidence only a portion of the offered testimony?
6. Did the trial court impose an excessive sentence?

FACTS
On the afternoon of June 29, 1983, defendant went to the Travelodge Motel lounge in Baton Rouge, Louisiana, after calling the victim and asking him to meet her there. She arrived at approximately 4:00 p.m. but stayed for only a few minutes and then returned at approximately 4:30 p.m. She took a seat at the bar and told the bartender that she was meeting someone. Another customer introduced defendant to the bartender and ordered a beer for her. A few minutes later the victim walked into the bar, exchanged pleasantries with one or two other patrons and sat down next to her.
Defendant testified that they began discussing an argument that had occurred the previous evening concerning the victim's involvement with another woman. During that argument, the victim had taunted defendant with the words "... would you like for me to tell you how good her pussy was?" Defendant asked him if he would like to tell her again how good his girlfriend's pussy was. She testified that he laughed and said, "You want to talk about that again." Defendant testified that at that time she shot him with a gun she had purchased earlier that day.
Several patrons at the bar were eyewitnesses to the shooting. One witness testified that, after the shooting, defendant calmly walked out of the bar. She was seen getting into an automobile and driving away. The victim was immediately transported to a local hospital and underwent surgery which was unsuccessful. He died early on June 30, 1983.
The police located defendant in a hospital on the day following the shooting. She had attempted suicide with an overdose of drugs. When she was released from the hospital, she was arrested for the murder of her husband.

RESTRICTION OF VOIR DIRE
Defendant alleges the trial court erred in restricting her voir dire examination, arguing that, because of the national publicity and debate centering around the insanity defense and battered woman's syndrome, it was crucial to be able to examine prospective jurors on their attitudes and feelings toward these issues. The specific questions posed by defense counsel were:
1. Do you think a man is ever justified in punching a woman?
2. Do you have any feelings about whether insanity should be a defense to a crime?
3. Can you imaginedo you feel that it's possible for you to in advanceuh say in something this important that you are going to accept rules at the end when you don't know the rules in the beginning?
. . . . .
ICan you just totally say I am going to accept a set of rules at the end and decide a person's life on them when you don't know what those rules are going to be?
. . . . .

*425 Do you feel that justice is important?
. . . . .
Do you feel that there could ever be a conflict between justice and adhering to the rules?
. . . . .
Do you have an idea what you would do if there were a conflict between justice and adhering to the rules?
4. What if at the end when you are given the rules you determine that for [your] own self it would be wrong to vote one way or the other by followingthat following the rules would be wrong? Well, we call it justice but rightness or wrongness is
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17. LSA-C.Cr.P. art. 786 provides that the court, the State, and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. The purpose of voir dire examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge, whose rulings will not be disturbed on appeal in absence of a clear abuse of discretion. A review of his rulings should be undertaken only on the record of the voir dire examination as a whole to determine whether a sufficiently wide latitude was afforded the defendant in examining prospective jurors. State v. Williams, 457 So.2d 610, 613 (La.1984).
However, voir dire examination does not encompass unlimited inquiry by defendant into all possible prejudices of prospective jurors, nor their opinions on evidence (or its weight) to be offered at trial, not even hypothetical questions and questions of law which call for any prejudgment of supposed facts. State v. James, 431 So.2d 399 (La.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983); State v. Vaughn, 431 So.2d 358 (La.1982); State v. Clark, 325 So.2d 802 (La.1976). Defendant's right to intelligently exercise cause and peremptory challenges may not be curtailed, though, by exclusion of non-repetitious voir dire questions reasonably exploring potential prejudices, predispositions or misunderstandings on central issues. Defendant should be able to make such inquiries of prospective jurors as will enable him to secure his constitutional rights by eliciting facts which show grounds for challenges. State v. Duplessis, 457 So.2d 604, 606 (La.1984); State v. Carter, 459 So.2d 1324 (La.App. 1st Cir.1984).
In considering the exclusion of defense questions in voir dire examinations, the Louisiana Supreme Court noted:
Although the ultimate decision on challenges for cause generally turns on whether the prospective juror can follow the law given by the court, defense counsel must be permitted to question jurors about their attitudes toward such laws as reasonable doubt so that counsel may exercise his peremptory challenges intelligently. When a trial judge limits defense counsel to a statement of the law and a closed-end question on the juror's ability to follow the law, he flirts with reversible error on constitutional grounds.
Duplessis, 457 So.2d at 606, n. 3.
Initially, we note that only a portion of the voir dire was designated by defendant for transcription. Nevertheless, we find sufficient evidence in the record before us to determine that the trial court did not err in refusing to permit counsel to pose these questions to the jurors.
The record reflects that the State specifically objected to the questions because they were posed as hypothetical inquiries or, in the case of question number two, on the grounds that the juror's feelings about the defense of insanity were irrelevant.
The first, third and fourth questions posed by defense counsel, as set out above, *426 clearly called for a pre-judgment by the prospective juror, and were justifiably excluded by the trial court. The court told defense counsel that he would be permitted to query prospective jurors to determine if they could accept the court's instructions on the insanity defense, and follow same in arriving at a verdict.
A sharp distinction must be drawn between questions designed to elicit possible prejudices against planned defenses and a broad query about the feelings a prospective juror might have with regard to an issue at trial. As the trial court recognized, without having been instructed on the components of a defense of insanity, a juror could not be expected to respond to a general question in a way that would provide counsel with a basis of information on which to style a challenge. Therefore, even though defendant might be entitled to query jurors with regard to their application of the insanity defense, the question posed was objectionable on the basis that, as phrased, it was irrelevant.
The trial court herein did not limit defense counsel to a statement of the law and a question on the juror's ability to follow the law, although the court did indicate that those would be permissible inquiries. The specific question posed to the prospective juror placed him in the unreasonable position of relating whether he had feelings about a subject with which he could not be expected to be familiar and, therefore, was properly excluded. We find no abuse of discretion here.

OVERT ACT REQUIREMENT
Defendant argues the trial court erred in excluding evidence of prior violent conduct by the victim directed toward her. She alleges that the presentation of this evidence was crucial to substantiate her defenses of insanity and self-defense.
Defendant attempted to establish that she was a victim of the "battered woman's syndrome." Descriptions of this syndrome emphasize a husband's repeated and violent beatings and the wife's dependency, economic and emotional, that made it practically impossible for her to leave. When faced with an immediate threat, victims may be driven to take the lives of their mates as the only possible method of escaping the threat. See Moran v. Ohio, ___ U.S.___, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984). Defendant attempted to establish that their marriage had been characterized by violent beatings, including an episode which had occurred on the evening which preceded the shooting; and by mental abuse inflicted upon her by her husband, which further resulted in mental instability and alcoholism.
The trial court ruled that the evidence of the violent relationship between the victim and defendant was not admissible because she could not establish an overt act by the victim at the time of the shooting.
LSA-R.S. 15:482 places a restriction on the use of evidence of threats or the dangerous character of the victim, and provides as follows:
In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against the accused is not admissible.
Defendant argues that the overt act requirement does not necessitate a showing of an overt act contemporaneously with the defensive action; and that the provisions of LSA-R.S. 15:482 are not limited to instances wherein the defendant pleads self-defense, and should have been applied to evidence offered toward the defense of insanity. Defendant further argues that LSA-R.S. 15:482 operates as an unconstitutional deprivation of due process by denying her right to present a defense or, in the alternative, was applied herein in an unconstitutional manner resulting in the denial of a fair trial.
The jurisprudence has interpreted LSA-R.S. 15:482 to mean that evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that the victim made a hostile demonstration or an overt act, against the accused at the time of the incident, of such character as to create in the mind of *427 a reasonable person the belief that he is in immediate danger of losing his life or suffering great bodily harm. (Emphasis added). See State v. Williams, 410 So.2d 217, 221 (La.1982); State v. Jones, 451 So.2d 1181, 1185 (La.App. 1st Cir.1984). For the reasons hereafter stated, the trial court was correct in concluding that the proper predicate for the introduction of the victim's threats and dangerous character had not been laid.
Defendant next argues that evidence of this nature should be ruled admissible because she has pled insanity as a defense. Although it is frequently true that evidence inadmissible for one purpose is admissible for another, we do not find defendant's arguments persuasive.
The State of Louisiana does not recognize the doctrine of diminished responsibility. State v. Lecompte, 371 So.2d 239 (La.1978). The Louisiana Criminal Code, LSA-R.S. 14:14, states the test to determine legal insanity as follows:
If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility.
Our Supreme Court has consistently held that under the statutory definition in LSA-R.S. 14:14, a mental defect short of legal insanity cannot serve to negate specific intent and reduce the degree of the crime. State v. Andrews, 369 So.2d 1049 (La. 1979).
The evidence defendant asserts was necessary to substantiate her defense of insanity was presented to the expert witnesses in the form of hypothetical facts; however, she was unable to establish the requisite predicate for the jury to consider their opinions because the trial court sustained the state's objections and effectively kept the facts she wanted to present from the jury. Dr. Louis Cenac, defendant's expert in the field of psychiatry, testified that defendant knew right from wrong, but he testified that the question of right or wrong was irrelevant to her at the time of the crime because it was not the dominant principle operating her personality. He felt that she was in the highest degree of psychological pain with tremendous doubt over her self worth so when the victim laughed at her, the shooting was like a reflex away from pain rather than a calculated act. Dr. Christine Angelloz, a psychologist whose field of expertise includes the battered woman's syndrome and pathological family relationships, was also provided hypothetical facts and determined that the defendant fit the factors which characterized a victim of the battered woman's syndrome.
When a defendant pleads not guilty and not guilty by reason of insanity, the determination of defendant's sanity at the time of the offense is a jury question. State v. Craig, 340 So.2d 191, 192 (La. 1976).
The jury was provided a basis for the determination of defendant's sanity. Evidence of the hostile environment and at times brutal relationship which existed between these parties may have been relevant as to defendant's overall mental health, but the trial court obviously determined that it was not admissible under LSA-R.S. 15:482 in connection with her defense of insanity and the battered woman's syndrome. We agree that, under these facts,[1] since there was no evidence of an overt act at the time of the incident, LSA-R.S. 15:482 restricts the admissibility of evidence of prior hostile acts.
Defendant argues that the restriction of testimony about the victim's violent nature *428 prevented her from establishing that she acted in self-defense. She argues that her conduct should have been judged in light of her history as a battered wife, and that the history which caused it would have demonstrated defendant's reasonable perception of imminent danger. Succinctly stated, defendant attempts to establish the defense that one who is a victim of family abuse is justified in killing the abuser.
LSA-R.S. 14:20 provides the defense of justification, and contains the following pertinent provisions:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; ...
We note that defendant did not argue in brief, nor seriously attempt to establish at trial, the second element, that she reasonably believed that the killing was necessary to save herself. Although defendant attempted to establish that the victim was armed at the time of the shooting because a gun was found with his effects, all the testimony clearly indicated that the victim was not threatening defendant at the time. Defendant testified that she shot him in response to his laughter, because she wanted "to stop the pain".
Since the testimony of defendant clearly establishes that she did not shoot the victim out of a reasonable belief that the killing was necessary to save herself, we need not consider the applicability of the battered woman's syndrome to the first requirement of justification, the reasonable belief that she was in imminent danger.
Defendant also argues that LSA-R.S. 15:482 is unconstitutional; or, as applied, resulted in the denial of a fair trial.
Defendant submits that LSA-R.S. 15:482 is unconstitutional under the holdings of Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), and Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), wherein the United States Supreme Court recognized that the strict application of otherwise valid evidentiary rules may result in the denial of due process.
In Washington v. Texas defendant claimed that he was denied his right to compulsory process for obtaining witnesses because of a Texas Statute which provided that one co-conspirator could not testify on behalf of the other. In Chambers, the court considered the Mississippi "voucher rule" wherein the defendant was prevented from impeaching his own witness. The witness was a man who had confessed to others that he had killed the party whose death Chambers was accused of; when the State failed to subpoena the witness, Chambers did, but was unable, under the statute, to present evidence that the man had confessed to others when he repudiated his confession at trial.[2] The Court, in Chambers, recognized that "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process ... [b]ut its denial or significant diminution calls into question the ultimate `integrity of the fact-finding process' and requires that the competing interest be closely examined." (Citations omitted.) 93 S.Ct. at 1046.
Similarly, we feel that the right to present evidence in defense of charges must be balanced against competing concerns in the interest of a fair trial. The overt act requirement works to prevent undue prejudice to the prosecution which might result if the jury was aware of the victim's undesirable nature. It is crucial to insure that the jury's attention is focused on the incident in question, and defendant's conduct judged accordingly. Although the long history of mental and physical abuse may have played a part in the development of this tragedy, we do not find that the *429 exclusion of this evidence resulted in the deprivation of a fair trial, rather, defendant's constitutional rights to due process of law and a fair trial were honored by the trial court.

DENIAL OF A CONTINUANCE
Defendant argues that the trial court erred in denying her motion for a continuance based on the absence of a material witness, and by ruling that only portions of the statement by that witness could be introduced into evidence.
On the day of trial, defendant moved for a continuance on the grounds that Raymond Marrero, her first husband was hospitalized with pneumonia. The court conducted a hearing at that time. Defendant stated that Marrero had been in the hospital for six of the preceding eight weeks, that he was a crucial witness, that he was unable to come to court at that time to testify, but that he would be available within a reasonable length of time. Defendant attached a statement of the facts to which the witness would attest. The State responded, arguing against the continuance because the witness had been admitted to the hospital two weeks previously, and defendant could have filed her motion prior to the trial; that the statement submitted by defendant was hearsay, and its materiality had not been established. The State suggested that the court adjourn to the hospital at the time Marrero's testimony became necessary, or that his testimony be video taped for replay at the trial.
The court noted that a motion for continuance, based on the unavailability of Marrero, had been made on September 29, 1983, the original trial date; at that time, the State acquiesced, and counsel for both sides had chosen the new trial date of November 14, 1983. The court further noted that, under LSA-C.Cr.P. art. 709, defendant must state the facts to which the witness would testify; and Marrero's statement which was attached to the motion contained few facts, and consisted mostly of hearsay and opinion. The court then found that Marrero was not a material witness and denied the motion for a continuance, but told defendant that the matter could be re-urged if facts developed which would make him a material witness. During the trial, defendant requested that arrangements be made for the court to go to the hospital. The court indicated that such a trip might be permissible. At the close of defendant's case, she again moved for a recess to go to the hospital to take his testimony. The court agreed to hear his testimony either later that same evening or on the following morning, at defendant's option. The next morning, the state stipulated to some of the facts in the statement, and the trial court indicated those portions of the statement which constituted admissible testimony. The statement, as edited, was read to the jury. Defendant reserved his right of appellate review on the portions of the statement which were not admitted to the jury.
Defendant argues that the trial court erred in finding that Marrero was not a material witness, and that the court improperly deleted portions of the statement where Marrero expressed his opinion on matters relating to defendant's sanity.
Initially, we note that the decision as to whether to grant a recess is within the sound discretion of the trial court and will not be reversed in the absence of a showing of abuse. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir. 1984). We find no abuse of discretion. The trial court deleted much of this statement on the grounds that the facts related were irrelevant inadmissible opinions or hearsay. Even if the excluded testimony of the witness were admissible, the court correctly concluded the evidence was not so material as to warrant a recess of the trial.
Defendant further argued that, although not an expert, Marrero should have been permitted to give opinion testimony because of the close ties that remained between them after their divorce. She specifically argued that Marrero should have been permitted to testify with regard to her mental state. After reviewing the entire statement, we note that most of the *430 part relating to defendant's mental state was read to the jury. Other than objectionable hearsay statements, the deleted portions related to defendant's drinking problem, conjecture about the relationship which existed between defendant and the victim and Marrero's opinion of the victim. The trial court did not err when he excluded this evidence.

EXCESSIVE SENTENCE
Defendant argues that the trial court erred in imposing an excessive sentence.
The maximum term of imprisonment for a conviction of manslaughter is twenty-one years at hard labor. LSA-R.S. 14:31. The trial court must impose a minimum sentence of five years at hard labor, without the benefit of probation, parole or suspension of sentence. LSA-C.Cr.P. art. 893.1. An additional penalty of two years at hard labor, without benefit of probation, parole or suspension of sentence was required by the provisions of LSA-R.S. 14:95.2, the firearm enhancement statute.
Defendant argues that the trial court did not specifically articulate its reasons for the imposition of the sentence and, if it had, a proper evaluation of the mitigating factors would have mandated a much lighter sentence.
The trial court has wide discretion in the imposition of sentence, and, given compliance with the sentencing criteria of LSA-C.Cr.P. 894.1, the sentence will not be set aside in the absence of a manifest abuse of discretion. A sentence will not be determined to be excessive unless it is grossly disproportionate to the crime, or nothing more than the needless imposition of pain and suffering. State v. Wardlow, 448 So.2d 257, 259 (La.App. 1st Cir.1984).
The trial court specifically noted that it had considered the sentencing criteria and adopted by reference the trial transcript as the factual background for the sentencing. The record reflects that the court carefully related the sentence to the offense and defendant.
When a sentencing court enumerates some of the statutorily mandated sentencing criteria, a factual basis is present, and it is not necessary for the court to enumerate every factor. State v. Lewis, 434 So.2d 1261, 1262 (La.App. 1st Cir.1983). Although defendant has carefully analyzed her conduct in light of each of the mitigating factors, we find the trial court's statement of reasons amply demonstrates that the entirety of LSA-C.Cr.P. art. 894.1 was considered. The sentence imposed was well within the permissible range of sentences and does not constitute a constitutionally excessive sentence.
For the reasons set forth above, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We also note that defendant testified that she brought up the matter of the other woman just before she shot the victim. Much of Dr. Cenac's opinion was predicated, therefore, on the defendant's assertion that the victim had initiated that discussion at the lounge. A jury could have found from defendant's testimony that jealousy over losing her husband to another woman rather than insanity provoked the shooting. The evidence reflects that defendant was told less than two hours before the shooting that the victim had filed for a legal separation.
[2] See also Green v. Georgia, 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979), wherein the court held that the exclusion of hearsay testimony under the Georgia Evidence Code violated defendant's constitutional right to due process.