**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 22 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TIEQUON AUNDRAY COX, | No. 07-99010 |
| Petitioner - Appellant, | D.C. No. CV-92-03370-CBM |
| v. | |
| ROBERT L. AYERS, California State Prison at San Quentin, | MEMORANDUM* |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
Consuelo B. Marshall, District Judge, Presiding

Argued and Submitted February 5, 2009
Pasadena, California

Before: PREGERSON, GRABER, and WARDLAW, Circuit Judges.

Petitioner Tiequon Aundray Cox, a California state prisoner, appeals the

district court's denial of his habeas corpus petition, filed under 28 U.S.C. § 2254,

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

challenging his conviction and death sentence for the murders of four victims.[1]

Because Petitioner filed his original habeas petition in the district court before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of AEDPA do not apply. Alcala v. Woodford, 334 F.3d 862, 868 (9th Cir. 2003). We review de novo the district court's denial of this petition for writ of habeas corpus, McNeil v. Middleton, 344 F.3d 988, 994 (9th Cir. 2003), rev'd on other grounds, 541 U.S. 433 (2004) (per curiam), and we affirm.

1. Petitioner's counsel did not provide ineffective assistance of counsel during the trial's guilt phase. See Strickland v. Washington, 466 U.S. 668, 688 (1984). Petitioner argues otherwise, stating that his counsel failed to investigate and present evidence that Petitioner was not the shooter and that he did not intend the victims' deaths.

Under California law, a defendant can be convicted of first-degree murder under an aiding and abetting theory even if the defendant lacked the specific intent to kill. People v. Williams, 941 P.2d 752, 787 (Cal. 1997). Here, there was

_____

[1]We issued a certificate of appealability with regard to three issues previously uncertified by the district court. This memorandum disposition concerns those three issues only; we have addressed Petitioner's other issues in an amended opinion, filed on this date.

overwhelming evidence tying Petitioner to the murders. Four witnesses testified that Petitioner either entered or exited the crime scene carrying the murder weapon. Petitioner's palm print was found on a trunk in the bedroom where three of the victims were killed. Ballistics testing established that the empty shell casings and spent bullets from the vicinity of each victim came from the same semiautomatic .30-caliber carbine that Petitioner gave a witness to destroy. At a minimum, this evidence established that Petitioner aided and abetted his co-defendant in the murders. Thus, under California law, Petitioner would have been convicted of first-degree murder even if his counsel had attempted to show that Petitioner was not the shooter or did not have the intent to kill the victims.

Petitioner also faults his counsel for foregoing a defense to the multiple-murder special circumstance allegation. Petitioner's counsel testified that they chose not to present a defense at the guilt phase of trial because the evidence of Petitioner's guilt was overwhelming and because counsel wanted to maintain credibility with the jury for the penalty phase. Petitioner argues that his counsel's decision not to argue against the multiple-murder special circumstances allegation resulted from a misunderstanding of the law, but the record does not support that argument.

3

Petitioner's counsel made a strategic decision to waive closing argument, concede guilt, and concentrate on the penalty phase. The Supreme Court has held that counsel for a defendant "may reasonably decide to focus on the trial's penalty phase, at which time counsel's mission is to persuade the trier that his client's life should be spared." Florida v. Nixon, 543 U.S. 175, 191 (2004). Accordingly, counsel's representation did not fall below an "objective standard of reasonableness." Strickland, 466 U.S. at 688. Even if counsel's representation was objectively unreasonable, Petitioner cannot demonstrate the required prejudice from that representation, id., because overwhelming evidence established his guilt.

2. The trial court did not violate Petitioner's right to be present when it excluded Petitioner from hearings on whether to shackle Petitioner and excluded him from a side-bar conference about counsel's decision not to present a closing argument during the guilt phase.

Generally, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure" or if the defendant's presence "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." Kentucky v. Stincer, 482 U.S. 730, 745, 754 (1987) (internal quotation marks omitted). But, due process does not require the defendant to be

4

present "when presence would be useless, or the benefit but a shadow." Snyder v. Massachusetts, 291 U.S. 97, 106-07 (1934), overruled in part on other grounds by Molloy v. Hogan, 378 U.S. 1 (1964); United States v. Veatch, 674 F.2d 1217, 1225 (9th Cir. 1981).

The hearings on the use of physical restraints were not "critical" to the outcome of the trial because they involved a collateral issue of security that did not have a substantial relation to the question of guilt or penalty. United States v. Mitchell, 502 F.3d 931, 972 (9th Cir. 2007); United States v. Olano, 62 F.3d 1180, 1191-92 (9th Cir. 1995). In addition, Petitioner's presence at these hearings would not have helped him. The trial court had been told that there was "some possibility of escape" by Petitioner and, even if Petitioner had denied the rumored escape, the trial court likely would have ordered him shackled.

The trial court also could exclude Petitioner from a side-bar conference about counsel's decision not to present a closing argument during the guilt phase. This particular bench conference was not a "critical" stage in the trial. See Hovey v. Ayers, 458 F.3d 892 (9th Cir. 2006) (holding that a hearing on defense counsel's competency was not a "critical" stage of trial). Further, the record shows that Petitioner was present in court during discussions about his right to present a defense, that he was aware of his counsel's decisions and actions and had the

5

opportunity to object in court, and that he never objected to his counsel's decisions, actions, or assertion on the record that there was no conflict between counsel and Petitioner about their defense strategy. Under these circumstances, Petitioner had no right to be present at the side-bar conference for the purpose of objecting to counsel's strategic decision. See Florida, 543 U.S. at 192 (holding that defendant need not explicitly consent to counsel's strategic decision to concede guilt and focus on penalty phase).

3. Petitioner was not prejudiced by instances of jury misconduct. Petitioner argues that his constitutional rights were violated as a result of the following instances of jury misconduct: (1) some jurors knew that co-defendant Horace Burns was convicted and received a life sentence; (2) even though it was not admitted at trial, some jurors knew about and discussed Burns's letter to Petitioner, in which Burns asked Petitioner to take the fall for everyone else and offered to make sure that no witnesses would testify against him; and (3) the spectators' outbursts and comments were perceived by jurors.

On habeas review of a claim that jurors were exposed to extrajudicial evidence before rendering a verdict, the petitioner bears the burden of establishing the extrinsic material "had a substantial and injurious effect" on the jury's verdict.

6

<u>Fields v. Brown</u>, 503 F.3d 755, 776 (9th Cir. 2007) (en banc).  We have identified the following factors that are particularly relevant to the inquiry:

> "(1) whether the material was actually received, and if so, how; (2) the length of time it was available to the jury; (3) the extent to which the juror discussed and considered it; (4) whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and (5) any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict."

<u>Sassounian v. Roe</u>, 230 F.3d 1097, 1109 (9th Cir. 2000) (quoting <u>Dickson v. Sullivan</u>, 849 F.2d 403, 406 (9th Cir. 1988)).  We have also identified several factors diminishing the potential prejudice of extrinsic evidence:

> "(1) whether the prejudicial statement was ambiguously phrased; (2) whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial; (3) whether a curative instruction was given or some other step taken to ameliorate the prejudice; (4) the trial context; and (5) whether the statement was insufficiently prejudicial given the issues and evidence in the case."

<u>Id.</u> (quoting <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1491-92 (9th Cir. 1997)).

Petitioner was not prejudiced by some jurors' knowledge of Burns' conviction and life sentence.  Only one juror declared that there was a discussion about Burns' life sentence during their deliberations; none of the other juror declarations, which were similarly drafted by habeas counsel, contained such a statement.  Further, in light of the overwhelming evidence against Petitioner and

the despicable nature of the crimes, as well as the trial court's instructions requiring the jury to rest its findings only on the evidence presented at trial, the district court properly held that Petitioner was not prejudiced by the alleged jury misconduct.

Petitioner also was not prejudiced by the jury's knowledge of a letter written by Burns to Petitioner that was not admitted at trial. Petitioner failed to establish that the letter was discussed during jury deliberations or that the jurors were exposed to information about the letter during Petitioner's trial. Only three jurors mentioned the letter in their declarations, and none of them knew the actual content of the letter. None of the jurors stated with certainty that the letter was discussed during deliberations. Under these circumstances, Petitioner cannot show prejudice.

Lastly, Petitioner was not prejudiced by improper spectator conduct in the presence of the jury. Prejudice will be limited if a "curative instruction was given or some other step taken to ameliorate the prejudice." Sassounian, 230 F.3d at 1109 (internal quotation marks omitted); see also Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007) ("The trial court properly instructed the jury to disregard any extraneous comments and to decide the case based only on the evidence at trial; juries are presumed to follow the court's instructions."). Here, the trial court instructed the jury not to discuss the case among themselves or with

8

anyone else, and not to allow anyone to address them about the case. The trial court, in the jury's presence, admonished the spectators "to watch their conversations and behavior in the hallways when you see any juror whether in this case or any other case, approach you, so that we don't have a problem." When a spectator made an inappropriate outburst in the courtroom, the court immediately told the jury to "disregard the outburst of the spectator and . . . not to consider it for any purpose whatsoever." Further, the evidence supporting Petitioner's convictions and death sentence was overwhelming. In light of these circumstances, Petitioner was not prejudiced by the spectator's conduct.

AFFIRMED.